UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUCIOUS PETERS,

       Petitioner,

       -v-                       **No. 6:13-cv-06222(MAT)**

HAROLD D. GRAHAM, *Superintendent of*     **DECISION AND ORDER**
*Auburn Correctional Facility*,

       Respondent.

---

## I. Introduction

Petitioner Lucious Peters ("Petitioner"), an inmate confined at the Auburn Correctional Facility in Auburn, New York, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 8, 2006, Petitioner was convicted in Monroe County Court of murder in the second degree pursuant to N.Y. Penal Law § 125.25(3) and on January 10, 2007, he was sentenced to an indeterminate term of incarceration of 25 years to life. Petitioner seeks a writ of habeas corpus on the ground that his trial counsel provided ineffective legal assistance. For the reasons set forth below, habeas relief is denied and the amended petition (Docket No. 13) is dismissed.

## II. Factual Background

On March 9, 2006, Herschel Scriven ("Scriven") was backing out of a friend's driveway when three men approached the car, intending to commit an armed robbery. Scriven continued backing out, and the

would-be robbers fired multiple shots into the vehicle. Scriven was struck in the head and killed by a single shotgun slog.

On April 3, 2006, in the course of investigating Scriven's murder, Investigators Randall Benjamin and Neil O'Brien located petitioner at Monroe Community College ("MCC") and told him they wanted him to come to the Public Safety Building ("PSB") to discuss a prior arrest related to a stolen car. Petitioner agreed to accompany the investigators to the PSB and, at approximately 8:12 a.m., he was placed in an interview room and provided with *Miranda* warnings. Petitioner indicated that he understood his rights and agreed to speak to the investigators. The interview lasted several hours and culminated in petitioner signing a written statement.

According to petitioner's written statement, on March 9, 2006, he was riding in a car with his friend Jacob Rouse, who subsequently picked up an individual named Brandon and an individual whose name petitioner did not know but referred to as "Tank". Petitioner and the others had pulled over and were throwing bottles out of the car when someone started talking about getting "jukes," which meant robbery. Petitioner claimed that he has "just laughed" when "jukes" were mentioned. Brandon, Tank, and petitioner then exited the car, while Rouse remained behind the wheel. Tank was carrying a shotgun, Brandon was carrying a silver handgun, and petitioner was carrying a plastic silver pellet gun. Petitioner was walking behind Brandon and Tank when he saw a car

running in a driveway. Brandon and Tank approached the car, but according to petitioner, he had changed his mind and so he "backed off." Brandon spoke to the driver of the car, who continued to drive. Brandon and Tank then shot at the vehicle, which crashed into a tree. Brandon, Tank, and petitioner ran back to Jacob's car and jumped in, and Jacob drove away.

On April 7, 2006, a Monroe County Grand Jury voted an indictment against petitioner and two co-defendants, Antwon Owens and Jacob Rouse. The indictment alleged that Owens had committed murder in the first degree by intentionally shooting and killing Scriven in the course of and in furtherance of a robbery or attempted robbery. The indictment further alleged that petitioner and Rouse had committed felony murder (murder in the second degree) by participating in a robbery or attempted robbery during the course of which a participant caused Scriven's death.

A jury trial was held from December 4, 2006, through December 8, 2006, before the Hon. Frank P. Geraci, Jr. At trial, petitioner elected to testify in his own defense. Petitioner was found guilty on one county of murder in the second degree. On January 10, 2007, he was sentenced to 25 years to life imprisonment.

Petitioner timely appealed to the Appellate Division, Fourth Department (the "Fourth Department"). On direct appeal, petitioner argued that: (1) the evidence at trial was insufficient; (2) petitioner's statement was involuntary and should have been

suppressed; (3) the trial court erred in ruling that petitioner could be cross-examined regarding a prior youthful offender adjudication and a prior adjournment in contemplation of dismissal; (4) petitioner was denied the effective assistance of counsel; and (5) the sentence was unduly harsh and severe. On December 23, 2011, the Fourth Department issued a decision unanimously affirming the judgment and specifically finding that petitioner's claim of ineffective assistance of counsel lacked merit. *See People v. Peters*, 90 A.D.3d 1507 (4th Dep't 2011).

Petitioner subsequently filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10 in Monroe County Court, asserting that he was denied the effective assistance of counsel because: (1) trial counsel failed to offer "impactful" advice regarding plea offers; (2) trial counsel failed to "investigate into latent errors of District Attorney's Affirmation"; (3) trial counsel failed to investigate relevant witnesses; (4) trial counsel failed to investigate or prepare a pre-sentence memorandum; (5) trial counsel failed to fully cross-examine the People's witnesses; (6) trial counsel failed to prepare petitioner for his trial testimony and/or sentencing; and (7) trial counsel did not discourage petitioner from testifying. The C.P.L. § 440.10 motion was denied without a hearing by Judge Vincent M. Dinolfo in a written decision and order dated July 8, 2013. The Fourth

Department denied Petitioner's request for leave to appeal on October 30, 2013.

**III. Discussion**

28 U.S.C. § 2254 "authorizes a federal court to grant a writ only where a state holds a petitioner in its custody in violation of 'the Constitution or laws or treaties of the United States.'" *Word v. Lord*, 648 F.3d 129, 131 (2d Cir.2011) (quoting 28 U.S.C. § 2254(a)). Because the instant petition post-dates the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, petitioner can obtain a writ of habeas corpus only if he can demonstrate that the state courts' adjudication on the merits of his ineffective assistance claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also, e.g., Harrington v. Richter*, 562 U.S. 86, 98 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2).").

The United States Supreme Court has determined that *Strickland v. Washington,* 466 U.S. 668 (1984), qualifies as "clearly

established law" for purposes of reviewing ineffective assistance claims under AEDPA. *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000)). The *Strickland* test comprises two necessary components: a deficient performance, and resulting prejudice. *Strickland*, 466 U.S. at 687. Therefore, this Court must determine if the state courts unreasonably applied *Strickland* to Petitioner's case. *See Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."). In *Harrington*, the Supreme Court emphasized the extremely high bar set by *Strickland* in conjunction with § 2254(d):

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so[.] The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (internal quotations and citations omitted; emphasis supplied).

Here, petitioner has made the following arguments in support of his ineffective assistance of counsel claim: (1) counsel failed to investigate the People's assertion that petitioner's brother,

Silas Peters, told police petitioner had admitted to him that he participated in Scriven's murder; (2) counsel failed to properly advise petitioner regarding two plea offers; (3) counsel failed to properly advise petitioner regarding his trial testimony; (4) counsel failed to effectively cross-examine Shannon McCaffrey; (5) counsel failed to call Billie Jo Pullen as a defense witness; (6) counsel failed to "contest the People's case"; (7) counsel failed to object to admission of photographs of the decedent; (8) counsel failed to file a pre-sentence memorandum; and (9) counsel failed to challenge Investigator Benjamin's credibility. *See* Docket 13 at 3-5. The Court considers each of these arguments below.

### A. Statement of Silas Peters

Petitioner asserts that his trial counsel failed to investigate the People's assertion that his brother, Silas Peters, had informed the police that petitioner confessed involvement in attempted robbery/murder to him. Specifically, in an affirmation submitted in response to an omnibus motion filed by petitioner's trial counsel, then-District Attorney Michael C. Green stated that there was probable cause to arrest petitioner on April 3, 2006, because police were aware he had confessed to his brother. *See* Docket No. 13 at 96. In an affidavit dated March 12, 2013, Silas Peters denies having told police that his brother confessed involvement in the crime. *Id*. at 66.

Petitioner has submitted no evidence that trial counsel failed to investigate the veracity of the police's claims. Silas Peters' affidavit does not address at all whether trial counsel spoke to him, not has petitioner provided any other facts from which the Court could conclude that counsel failed to investigate. Petitioner's argument therefore fails the first prong of the *Strickland* test. *See Burton v. Phillips*, 303 F. App'x 954, 956 (2d Cir. 2008) (claim failed the first prong of *Strickland* where party "adduced no evidence to support his claim that trial counsel failed to conduct a reasonable investigation"). It is entirely possible that trial counsel spoke with Silas Peters and concluded either that he was not credible or that there were other, strategic reasons not to challenge the People's assertion, and plaintiff has provided no evidence to the contrary. Significantly, the record indicates that plaintiff initially voluntarily spoke with police and that other witnesses beside Silas Peters had incriminated him. The People made reference to Silas Peters' statements only as an alternate argument as to the existence of probable cause. *See* Docket No. 13 at 96. Under these circumstances, the Court cannot conclude that the state court unreasonably applied *Strickland* in denying petitioner's claim.

**B.  Advice Regarding Plea Offers**

Petitioner claims that the District Attorney offered two plea deals to him, one before trial for 15 years to life if he would agree to testify against his co-defendants, and one after the

commencement of trial for "25 years flat." According to petitioner, his counsel failed to offer him "impactful" advice concerning these alleged plea offers. Docket No. 1 at 6; Docket No. 13 at 3.

Petitioner's claim fails the first prong of *Strickland* for the fundamental reason that there is no evidence (aside from petitioner's self-serving, after-the-fact statements) that any plea offers ever existed. To the contrary, petitioner has attached to his amended petition a letter dated October 24, 2013, from him to his trial counsel, in which he asks whether a plea offer was ever made and, if so, what it was. *See* Docket No. 13 at 101. Trial counsel sent a responsive letter to petitioner in which he stated that he had no record of a plea offer ever having been made and that, had such an offer been made, he would have immediately conveyed it to petitioner. *Id*. at 102. In another letter dated March 29, 2013, trial counsel stated that no reduced offer was ever made and that the only "plea" option was a plea to the charge. *Id*. at 105. Trial counsel further explained that he had told petitioner that the only alternative to trial was a plea to the charge, and that because of the high profile of the matter, it would have been "political suicide" for the district attorney to offer any lesser deal. *Id*. Petitioner's current claim that he was offered two different plea offers is plainly contradicted by the record, and the Court is not required to accept his uncorroborated, self-serving testimony as sufficient evidence to support an

ineffective assistance of counsel claim. *See, e.g., Grullon v. United States*, 2004 WL 1900340, at *6 (S.D.N.Y. Aug.24, 2004) ("In considering an ineffective counsel claim, a court need not accept a petitioner's uncorroborated, self-serving testimony as true.").

Moreover, even assuming that there were plea offers made in this matter, petitioner's own allegations belie his claim of ineffective assistance. Where a plea offer is made, defense counsel "must give the client the benefit of [his] professional advice on this crucial decision of whether to plead guilty." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (internal citation omitted). "As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Id.* (internal citations and quotations omitted). However, "the ultimate decision whether to plead guilty must be made by the defendant." *Id.*

Here, petitioner alleges that his counsel "laid out the possibilities of [petitioner's] case, told [him] the general likelihood of . . . winning the case, and . . . said [he] should consider taking the plea." Docket No. 13 at 50. Petitioner specifically alleges that counsel told him about the potential sentence should he be convicted. *Id.* Indeed, it appears that petitioner's sole complaint is that his counsel failed to advocate strongly enough that he take the alleged plea. However, the Second

Circuit has expressly held that counsel is not required to specifically advise a client "to either plead guilty or not." *Purdy*, 208 F. 3d at 46. In short, petitioner's claim that trial counsel did not "advise [him] on the importance of taking the plea offer" (Docket No. 13 at 59) fails on its face to rise to the level of ineffective assistance.

**C. Advise Regarding Trial Testimony**

Petitioner also contends that trial counsel failed to properly advise him regarding whether or not to take the stand in his own defense and failed to properly prepare him to testify. Specifically, petitioner argues that trial counsel advised him that he had the right to testify if he chose, but did not explain whether such testimony would be helpful. Petitioner further alleges that, once he had decided to testify, defense counsel failed to properly prepare him.

A criminal defendant has a fundamental right to testify in his own defense, and counsel is required to advise his client of that right. *See United States v. Caracappa*, 614 F.3d 30, 48 (2d Cir. 2010). "[T]he ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997).

"[T]he burden of ensuring that the defendant is informed of the nature and existence of the right to testify ... is a component of the effective assistance of counsel." *Chang v. United States*,

250 F.3d 79, 83 (2d Cir. 2001). Here, it is undisputed that trial counsel informed petitioner of his absolute right to testify on his own behalf. Moreover, the record strongly supports the conclusion that petitioner affirmatively and voluntarily decided to exercise that right. In the papers he submitted to the state court, petitioner affirmed that he "wanted to testify." Docket 13 at 82. Additionally, in a sworn affidavit dated April 8, 2013, petitioner stated that he believed testifying at trial would help him. *Id*. at 59. The essence of petitioner's argument seems to be that trial counsel should have aggressively persuaded him not to testify (*see, e.g.,* Docket No. 1 at 6 (alleging counsel "failed to discourage [petitioner] from testifying")), but it is well-established that defense counsel must honor his client's decision with respect to whether or not to testify on his own behalf. The course suggested by petitioner would itself potentially have been ineffective assistance of counsel. *See, e.g., Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 373 (E.D.N.Y. 2013) (defense lawyer allegedly used fear and manipulative tactics to prevent client from testifying was arguably outside the range of professional competence). Petitioner acknowledges that trial counsel informed him of his right to testify on his own behalf and respected his decision in that regard. The Court thus finds that petitioner has failed to establish that counsel's performance was deficient.

With respect to petitioner's claim that counsel failed to properly prepare him to testify, the sole factual argument offered by petitioner is that counsel "failed to inform [him] on how [his] character would be attacked when [he] took the stand. . . ." Docket No. 13 at 60. This vague allegation is insufficient to establish ineffective assistance of counsel. Notably, petitioner does not claim that his attorney failed to inform him that his character would be attacked, just that counsel did not explain exactly how that would occur. A lawyer is not required, nor could he reasonably be expected, to foresee the precise form that cross-examination will take. Petitioner has also offered no details regarding the information provided by counsel, nor has he suggested what counsel should have done differently. *See Knox v. Rock*, 2013 WL 474754, at *7 (W.D.N.Y. Feb. 6, 2013) (finding ineffective assistance of counsel claim meritless where petitioner failed to explain how counsel should have prepared him to testify); *Rodriguez v. Uhler*, 2017 WL 354180, at *11 (S.D.N.Y. Jan. 24, 2017) ("[petitioner's] occasionally combative tone on cross-examination does not establish that defense counsel's performance in preparing him to testify fell below an objective standard of reasonableness").

Additionally, the record shows that petitioner's counsel attempted to limit cross-examination. Specifically, petitioner's counsel made a motion pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974) to prevent the People from cross-examining petitioner about

-13-

his prior criminal history. It is not trial counsel's fault that his efforts failed. Under these circumstances, the Court cannot conclude that the state court's application of *Strickland* was unreasonable.

**D.  Cross-Examination of Shannon McCaffrey**

Petitioner contends that counsel failed to properly cross-examine witness Shannon McCaffrey. Although petitioner offers no detail to support this claim in his current papers, in the papers he submitted to the state court, he made it clear that he believed counsel should have spent more time attacking McCaffrey's credibility.

"[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer," and a court "should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). Here, petitioner's defense at trial was essentially that he was a bystander who had not participated in any robbery or attempted robbery. In cross-examining McCaffrey, defense counsel focused on the fact that she was unfamiliar with the details of the shooting - that she did not know who the participants were, that she did not know what the car looked like, and so forth. In other words, it appears that counsel made a strategic decision to cast doubt on McCaffrey's second-hand testimony not by directly attacking her credibility, but by illustrating the gaps in her knowledge. This is a legitimate

strategic decision by counsel, and the state court thus reasonably found that it did not rise to the level of ineffective assistance. *See Hill v. Bradt*, 2015 WL 5692818, at *3 (W.D.N.Y. Sept. 28, 2015) ("The fact that defense counsel's questioning may not have elicited the answers that would have been most beneficial to petitioner's case does not mean that counsel's questioning amounted to ineffective assistance, but rather speaks to the strength of the evidence against petitioner in this case.").

### E. Failure to Call Billie Jo Pullen

Petitioner argues that defense counsel should have called Billie Jo Pullen as a witness. Pullen apparently informed trial counsel that she wished to be a character reference for petitioner, and trial counsel informed her that he would call her if necessary.

"Counsel's decision as to whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)(internal quotation omitted). Particular deference is afforded to counsel's decision regarding whether to call a character witness. *See Jelinek v. Costello*, 247 F. Supp. 2d 212, 289 (E.D.N.Y. 2003) ("Whether or not to call a character witness is eminently a tactical decisions that another court is not in a good position to second-guess. Absent an extraordinary showing by the petitioner, such a claim will not merit a finding that trial counsel performed below the constitutional minimum."). Petitioner has made no

showing in this case that the failure to call Pullen was outside the bounds of professional conduct and has therefore failed to show deficient performance by counsel.

**F.   Failure to "Contest the People's Case"**

In his amended petition, petitioner claims that trial counsel failed to "contest the People's case." Docket No. 13 at 4. The sole specific deficiency identified by petitioner in connection with this claim is that trial counsel should have "challenged" the testimony of an eyewitness who stated that it could not have been petitioner who he saw, because the individual he saw was light-skinned. *Id.*

"[V]ague and conclusory allegations of ineffective assistance of counsel are insufficient to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smith v. Ercole*, 2010 WL 6595338, at *22 (N.D.N.Y. June 16, 2010) (internal quotation omitted). The broad claim that trial counsel failed to contest the People's case is precisely such a vague and conclusory allegation. With regard to the specific issue of the eyewitness testimony, petitioner has offered no explanation as to what he believes trial counsel should have done. On cross-examination, the witness in question testified that he did not see petitioner, that he did not recognize petitioner as having been present immediately after the shooting, and that petitioner was not the man he had described. In other words, this witness's testimony supported petitioner's claim that

he had stayed away from the car and was not a participant in the attempted robbery. It is not clear what more petitioner believes counsel could or should have done.

**G. Failure to Object to Photographs**

During petitioner's trial, post-mortem photographs of Scriven were admitted into evidence. Petitioner describes these photographs as "gruesome and highly prejudicial" and contends that trial counsel should have objected to their admission. Docket No. 13 at 4.

"Under well-established New York law, the trial court has discretion as to whether to introduce photographs of homicide victims." *Hill*, 2015 WL 5692818, at *8. "'[P]hotographs of a corpse are admissible even though they portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury.'" *Id.* (quoting *People v. Pobliner*, 32 N.Y.2d 356, 369–70 (1973)). The photographs in this case are not particularly graphic or gruesome, and petitioner has not identified any reason why they were inadmissible. Counsel cannot be faulted for failing to make an objection without sound basis in the law.

**H. Failure to File a Pre-sentence Memorandum**

Trial counsel did not submit a pre-sentence memorandum to the trial court. In a letter dated March 19, 2013, trial counsel stated that he did not submit such a memorandum because "[t]here was no compelling mental or physical disability . . . of which Lucious suffered, or any family/social/educational situation that

would be so compelling, that would have effected the 'fairness' of the trial process, or change the sentence ultimately imposed by Judge Geraci. There are times that a pre-sentencing memorandum would be far less than helpful, if it has the effect of hardening the judge's view of what sentence to impose." Docket No. 13 at 106.

Under New York law, "either the defendant or the prosecutor may submit a pre-sentence memorandum setting forth any information that is pertinent to sentencing." *Williams v. Allard*, 2007 WL 2572103, at *3 n.9 (N.D.N.Y. Aug. 31, 2007). Failure to submit a pre-sentence memorandum does not generally constitute ineffective assistance of counsel. *See United States v. Flemings*, 668 F. Supp. 304, 306 (S.D.N.Y. 1987) ("Although it is true that counsel did not file a presentence memorandum, this omission does not constitute ineffective assistance of counsel. Indeed, it is the Court's experience that defense attorneys rarely file presentence memoranda."). Here, trial counsel argued at sentencing for leniency, pointing out that petitioner did not personally harm Scriven, that petitioner's parents were elderly and unlikely to survive a lengthy prison sentence, that petitioner had been attending college and attempting to better himself, and that petitioner came from a good family and was part of the community. "The comments made at sentencing show that counsel's conduct did not fall below an objective standard of reasonableness." *Bethea v. Walsh*, 2016 WL 258639, at *25 (E.D.N.Y. Jan. 19, 2016).

**I.  Investigator Benjamin's Credibility**

Finally, Petitioner states in his petition that "[u]pon information and belief, Investigator Benjamin's credibility has been subsequently impeached by charges brought against him in another case." Docket No. 13 at 5. Petitioner does not expand on this alleged fact, nor has he explained how or why this relates to his claim of ineffective assistance of counsel. Again, "vague and conclusory allegations of ineffective assistance of counsel are insufficient to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smith*, 2010 WL 6595338, at *22 (internal quotation omitted). Without more, petitioner's claim that Investigator Benjamin's credibility was suspect simply does not establish that his trial counsel was ineffective.

**J.  Lack of Prejudice**

For all the reasons discussed above, the Court concludes that petitioner's counsel's performance was not deficient. However, even assuming *arguendo* that it were, petitioner has also failed to establish prejudice. The evidence against him at trial was quite strong, and included his written statement that he participated in the attempted robbery/shooting. *See, e.g., Kliti v. Savage*, 2013 WL 1192777, at *18 (E.D.N.Y. Mar. 22, 2013) (relatively minor errors by counsel are not prejudicial under *Strickland* where the evidence against petitioner is strong and includes inculpatory statements) (collecting cases). Petitioner has failed to establish a

significant likelihood that the alleged errors of trial counsel impacted the ultimate outcome of his case, and therefore cannot establish prejudice. His petition is also subject to denial on this ground.

**IV. Conclusion**

For the foregoing reasons, petitioner's request for a writ of habeas corpus is denied on the merits, and the amended petition (Docket No. 13) is dismissed. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated: June 28, 2017
Rochester, New York